UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-23993-SCOLA/TORRES

NANCY ANDREUS,

    Plaintiff,

vs.

GLOBAL RESORTS GROUP, CORP.,
d/b/a EL PARASIO MOTEL,

    Defendant.
_____/

### DEFENDANT'S AMENDED[1] MOTION TO SET ASIDE MEDIATED SETTLEMENT AGREEMENT BASED ON FRAUD AND DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING INTO PLAINTIFF'S FRAUD

Defendant files this **Amended Motion to Set Aside Mediated Settlement Agreement Based on Fraud and Request for Evidentiary Hearing Into Plaintiff's Fraud** and would state:

1. On Friday January 31, 2020, this past Friday, the parties met for a Court ordered Mediation in this FLSA overtime claim. At the mediation, Plaintiff produced three TD Bank statements in response to pending discovery requests from Defendant.

2. The three bank statements were a proverbial bombshell as they purportedly showed that Defendant's careful, detailed and seemingly accurate records regarding Plaintiff's dates of employment, pay received and number of hours worked, were wrong. Up until the time Plaintiff handed over these three TD Bank statements[2] there was absolutely no documentary or witness evidence to support Plaintiff's claim. The *sole* evidence supporting Plaintiff's claim, was Plaintiff's

---

[1] This motion is virtually identical to the original motion except that it contains the additional efforts undertaken by counsel to satisfy the required Local Rule 7.1(a)(3) good faith efforts, changes references to 'yesterday' with dates, and acknowledges the Plaintiff's counsel's Motion to Withdraw [DE 36] that was filed after the original motion.

[2] On January 29, 2020, just two days before the mediation, Plaintiff belatedly and inadequately responded to Defendant's initial Interrogatories and Requests for Production. Plaintiff failed to produce so much as a single document in response to Defendant's Initial Request for Production.

bald assertions of overtime work that were flatly contradicted by signed time cards and payroll records that showed proper payment for all hours on the signed timecards.

3. Defendant, shaken by this apparent proof that their records were unreliable, was induced into resolving the claim at Mediation. Accordingly, a Mediated Settlement Agreement was signed. Shortly after the mediation, Defendant's Corporate Representative was able to obtain information that revealed irregularities with the TD Bank statements and immediately alerted the undersigned. The undersigned, upon arriving home, checked the bank statements and, in light of the information obtained, was able to verify that the bank statements were fraudulent. It became clear the statements were a cut and paste job intended to defraud Defendant at mediation.

4. Attached as **Composite Exhibit A** are the three TD Bank Statements provided by Plaintiff. Each of the three TD Bank statements purports to reflect a time period in **2018**. It is clear the top section of each statement is from a real 2018 TD Bank statement, which was cut and pasted over a real 2019 TD Bank statement to make it appear that the itemized transactions were from 2018, not 2019. At this point, it is important to explain the reason why Plaintiff went to the trouble of meticulously and cleverly constructing these forged documents.

5. Plaintiff's Complaint alleged that Plaintiff was employed with Defendant from January 1, 2018 through August 9, 2019:

> Defendant EL PARAISO MOTEL employed Plaintiff NANCY ANDREUS as a non-exempt, hourly, full-time housekeeper from approximately January 01, 2018 to August 9, 2019, or 83 weeks.

Paragraph 7 of Plaintiff's Complaint [DE1]

In deposition, Plaintiff revised her claim regarding when she worked for Defendant and testified under oath that she worked from **March 12, 2018 to September 22, 2018**, left Defendant's employ and then returned to work with Defendant from February 2, 2019 through

August 9, 2019.

```
17 Q. From what date to what date?
18 A. I started working March 12th, 2018.
19 Q. And when did you stop?
20 A. September 22nd, 2018.
Page 7
25 Q. Did you go back to work there at another
1 period of time?
2 A. Yes, then I went back in February.
3 Q. Of what year?
4 A. 2019.
5 Q. Do you know what day in February of 2019 you
6 went back to work at El Parasio Hotel?
7 A. February 2nd.
8 Q. And until when did you work at El Parasio
9 Hotel in 2019?
10 A. August 9th, 2019.
Pages 7-8
```

Plaintiff's Deposition dated December 11, 2019.

6.      Plaintiff's sworn deposition testimony regarding when she worked in 2018 did not correlate to Defendant's timecards or payroll records.  Defendant's records showed that Plaintiff worked until **May 30, 2018**, *NOT* **September 22, 2018**.  At the deposition, the undersigned pressed Plaintiff as to what documents would show when she worked for Defendant.  In response, Plaintiff testified she had **bank statements** that proved what dates she worked for Defendant:

```
22 I want to know if you have any documents,
23 checks, e-mails, texts, photos, papers, that would show
24 us exactly when you started and when you left both in
25 2018 and 2019. Do you understand what I'm asking?
Page 68
1 A. I have some checks that I have given to my
2 attorney. And I have photographs from some coworkers
3 when we had a birthday party once there at El Parasio.
4 Q. Anything else?
5 A. I think I have statements. I can look for
6 them.
7 Q. What kind of statements?
8 A. Bank statements.
9 Q. Anything else?
10 A. No.
```

```
11 Q. Just to recap to make sure that I'm clear
12 about it. I was asking -- I wanted to know if you have
13 any documents that would help us see when exactly you
14 started in 2018 and exactly when you left in 2018 and
the
15 same for 2019. And you've -- and you've told us you have
16 checks that you gave to your attorney, some photos from
17 coworkers at a birthday party that was at the hotel --
18 A. Correct, correct.
19 Q. -- and some bank statements that would show
20 deposits from getting paid at the hotel.
21 A. Correct.
Page 69
```

Plaintiff's Deposition dated December 11, 2019.

7. On January 29, 2020 Plaintiff belatedly responded to Defendant's November 26, 2019 Initial Requests for Production. Defendant's Request for Production number 6 requested documents that showed the dates Plaintiff worked for Defendant. Despite the fact that Plaintiff testified earlier in deposition that she had bank statements which showed when she worked, her responses to discovery failed to reference or produce these bank statements. Request for Production number 6 and the response are as follows:

> **REQUEST:**
> All documents that support Plaintiff's claim of the dates she worked for Defendant.
>
> **ANSWER:**
> The documents sought in this request are not in Plaintiff's possession, custody, or control. These documents are in Defendant's possession, custody, or control.

Plaintiff's January 29, 2019 Response to Request for Production, response to request number 6.

8. Plaintiff's January 29, 2020 Response to Request for Production also sought any documentary proof that would show Defendant's time or payroll records were inaccurate:

> **REQUEST:**
> All documentary proof that support Plaintiff's allegation that Defendant failed to pay Plaintiff properly (such as

```
not paying for hours worked, not paying overtime,
inaccurate time records, errors of payment, errors on
payment related documents).

ANSWER:
None.
```

Plaintiff's January 29, 2019 Response to Request for Production, response to request number 5.

9.  Based on the Plaintiff's deposition and Plaintiff's subsequent responses to discovery, Defendant went into the Friday January 31, 2020 Mediation knowing that Plaintiff had absolutely *no proof* to support her claims. By contrast, Defendant had produced to Plaintiff signed time cards for every day Plaintiff worked and detailed payroll records that showed Plaintiff was properly paid for every hour she worked.

10. Plaintiff's production at mediation of the 3 TD Bank statements appeared to completely contradict Defendant's records thereby breathing life into Plaintiff's all but dead claim. If Plaintiff's TD Bank records were accurate, it showed Plaintiff was paid by Defendant through September 2018 and not the date Defendant asserted and Defendant's records showed. If the records produced by Plaintiff were accurate, that would mean there were at least three full months Plaintiff worked for Defendant where Defendant could not produce any timecards. Worse yet, if Plaintiff's bank statements were accurate, the detailed payroll records produced by Defendant could no longer be trusted as they did NOT show payment to Plaintiff for the July 2018 and August 2018 payments that Plaintiff's bank statements appeared to show. Rocked by the surprise 'evidence' Defendant was induced into signing the mediated settlement agreement.

11. After some research and corroboration, there is zero doubt the documents produced by Plaintiff are a clever forgery. By correlating the statements produced/manufactured by Plaintiff with Defendant's real 2019 payroll records it is clear that the three payments reflected in

the 3 attached TD Bank statements [$578.21 on May 3rd, $603.52 on July 12th and $603.52 on August 9th] **were** paid, however, those amounts were paid in **2019 not 2018!**

```
05/03      ACH  DEPOSIT,   EL  PARAISO  MOTEL  DIRECT  DEP  ****505308797KT              578.21
07/12      ACH  DEPOSIT,   EL  PARAISO  MOTEL  DIRECT  DEP  ****486333147KT              603.52

08/09      ACH  DEPOSIT,   EL  PARAISO  MOTEL  DIRECT  DEP  ****106163747KT              603.52
```

12.     Now, with the benefit of hindsight and the time to correlate the forged records with real records, there are other signs the documents are forged.  Some of those signs, in hindsight, seem obvious now.  In the undersigned's defense, the manner in which the statements were produced really belied any hint of fraud.  Plaintiff simply handed over bank documents to the undersigned during the Friday January 31, 2020 mediation.  The undersigned could not imagine a scenario where a Plaintiff in a Federal Court lawsuit would be bold and reckless enough to forge bank documents and then just hand them over to an adversary lawyer.

13.     Here are some things that reveal Plaintiff's forgery.  First, Defendant always has payroll transfers occur on a Friday.  The three dates that show payment from Defendant, May 3rd, July 12th and August 9th, are all Thursdays in 2018, but Fridays in 2019.  Second the transfer code next to each direct deposit from Defendant, ****_**106163747KT**_, is a code particular to ADP, the Payroll company Defendant used in 2019.  In 2018 Defendant used Quick Pay, and Quick Pay's code is different.

14.     The next thing clinches the fraud and is something that in hindsight is embarrassing that no one caught at the time.[3]  The itemized transactions prior to and after the direct deposit entries from Defendant have embedded authorization date codes for each and every transaction

---

[3] It is clear that Plaintiff's counsel was not aware that these documents were fraudulent when they were produced at the mediation.  After Defendant filed the original version of this motion, Plaintiff's counsel confronted his client and she admitted that these documents were forged.  When the Plaintiff then refused to dismiss this claim, Plaintiff's counsel appropriately moved to withdraw as counsel for Plaintiff.

and those date codes show they occurred in **2019!** Looking at the statement that purports to be Plaintiff's August 2018 TD Bank statement, the top is clearly a real TD Bank statement for Plaintiff, with her correct account number that matches Defendant's records:



Plaintiff cut and pasted the following real TD Bank transactions from 2019 onto the foregoing real 2018 statement top:

| Date | Description | Amount |
|---|---|---|
| 07/30 | DEBIT CARD CREDIT, *****30029660453, AUT 073019 VISA DDA REF MIAMI TOOL RENTAL 1   MIAMI   * FL | 100.00 |
| 08/07 | VISA TRANSFER, *****30029660453, AUT 080719 VISA TRANSFER P2P YANIELA CHARARAN   VISA DIRECT   * AZ | 50.00 |
| 08/09 | ACH DEPOSIT, EL PARAISO MOTEL DIRECT DEP ****106163747KT | 603.52 |
| 08/12 | DEBIT CARD CREDIT, *****30029660453, AUT 081019 VISA DDA REF APL ITUNES COM BILL   866 712 7753   * CA | 3.73 |
| 08/13 | ATM CASH DEPOSIT, *****30053325247 AUT 081319 ATM CASH DEPOSIT 1208 SW 8TH STREET   MIAMI   * PA | 40.00 |
| 08/14 | ATM CASH DEPOSIT, *****30053325247 AUT 081419 ATM CASH DEPOSIT 1208 SW 8TH STREET   MIAMI   * PA | 400.00 |
| 08/14 | ATM CASH DEPOSIT, *****30053325247 AUT 081419 ATM CASH DEPOSIT 1208 SW 8TH STREET   MIAMI   * PA | 100.00 |
| 08/15 | VISA TRANSFER, *****30053325247, AUT 081519 VISA TRANSFER P2P YANIELA CHARARAN   VISA DIRECT   * AZ | 250.00 |
| 08/20 | ATM CASH DEPOSIT, *****30053325247 AUT 081919 ATM CASH DEPOSIT 1208 SW 8TH STREET   MIAMI   * PA | 25.00 |

When read together, the forged document appears to show numerous detailed transactions in 2018. The date on the far left next of each transaction does not contain a year, just a month and the day. However, as mentioned earlier, each transaction has an embedded authorization code that is clearly a date. Those authorization codes show these are 2019 transactions and not 2018 transactions. Here are the entries before and after the August 9th direct deposit transfer from Defendant:

```
08/07   VISA TRANSFER, *****30029660453, AUT 080719 VISA TRANSFER         50.00
        P2P Y ANIELA CHARARAN VISA DIRECT * AZ
08/09   ACH DEPOSIT, EL PARAISO MOTEL DJRECT DEP ****106163747KT         603.52
08/12   DEBIT CARD CREDIT, *****30029660453, AUT 081019 VISA DDA REF       3.73
        APL iTUNES COM BILL 866 712 7753 - * CA
```

The August 7th transaction, a Visa bill payment of $50.00 for Plaintiff's daughter, has an authorization code of 080719, which is clearly August 7, 2019. Next is the August 9th direct deposit from Defendant, El Paraiso Motel for $603.52. Then there is the August 12th transaction, an iTunes charge for $3.73, has an authorization code of 081019, which is clearly August 10, 2019. This means that the August 9th direct deposit from Defendant, El Paraiso Motel for $603.52, is for August 9, **2019**, not August 9, **2018**.

15.    Of course, all doubt can be removed at an evidentiary hearing where a TD Bank records custodian appears with the real 2018 and real 2019 bank statements. Defendant requests such an evidentiary hearing even though it seems hard to imagine that Plaintiff would be willing to take the stand at such an evidentiary hearing and swear under oath that these statements are real.

16.    This Court is empowered to set aside the Mediated Settlement Agreement[4] under Federal Rule 60(b)(3) based on fraud. Federal Rule 60(b)(3) provides:

```
(b) Grounds for Relief from a Final Judgment, Order,
or Proceeding. On motion and just terms, the court may
relieve a party or its legal representative from a final
judgment, order, or proceeding for the following reasons:

    (3) fraud (whether previously called intrinsic
or extrinsic), misrepresentation, or misconduct by an
opposing party.
```

17.    The powers available to the Court under Rule 60(b) to void a settlement agreement procured by fraud are not limited to those set forth in Rule 60(b). Federal Rule 60(d)(3) specifically states that Rue 60(b) does not limit a court's power to set aside a judgment for fraud on

---

4 Defendant does not attach the Mediated Settlement Agreement but it can be provided to the Court.

the court. Federal Rule 60(d)(3) provides:

```
        (d) Other Powers to Grant Relief. This rule does not
    limit a court's power to:

            (3) set aside a judgment for fraud on the court.
```

18.     In *Butler v. Yusem*, 44 So.3d 102 (Fla. 2010), the Florida Supreme Court held there are four elements of fraud: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.

Plaintiff forged the 3 TD Bank statements in an effort to show she worked dates and times that she did not work. Plaintiff knew the documents were false when she turned them over. Plaintiff knew that she was going to be paid nothing in this case absent her forged documents as she had no proof of an overtime violation (because none occurred). Plaintiff intended for Defendant to rely on the false documents and Defendant did rely on them to its detriment by entering into a Mediated Settlement Agreement.

19.     The undersigned is not precluded from attaching the TD Bank documents [attached as Composite Exhibit A] which were provided to the undersigned by Plaintiff at mediation. Even though they were produced during the mediation, the Florida Mediation statute provides at least three grounds to allow the use of these documents. First, the documents are being used to commit a crime, that of fraud, see, Florida Statutes § 44.405(4)(a)2. Second, the documents can be used to establish the legally recognized ground for voiding the settlement, fraud in the inducement, see Florida Statutes § 44.405(4)(a)5. Lastly, these documents were otherwise discoverable (in fact, Defendant requested them and Plaintiff testified in deposition she had them), see Florida Statutes § 44.405(5). The full text of the relevant cited sections is set forth below:

```
    Florida Statutes § 44.405
```

(1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel.

(4)(a) Notwithstanding subsections (1) and (2), there is no confidentiality or privilege attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or for any mediation communication:

    2. That is willfully used to plan a crime, commit or attempt to commit a crime, conceal ongoing criminal activity, or threaten violence;

    5. Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation

(5) Information that is otherwise admissible or subject to discovery does not become inadmissible or protected from discovery by reason of its disclosure or use in mediation.

### **Good Faith Certification**

20.    Prior to filing this motion, the undersigned made a good faith effort to resolve the motion or narrow the issues addressed in the motion pursuant to Local Rule 7.1(a)(3). The Court entered its Order Denying Without Prejudice the Motion To Set Aside Mediated Settlement Agreement [DE 35] at approximately 3:28 p.m. on February 3, 2020. To paraphrase, the Court's order said that the undersigned had not taken sufficient efforts to satisfy the Good Faith confer requirements of Local Rule 7.1(a)(3).

Upon receiving the aforesaid order [DE 35] the undersigned immediately called counsel for the Plaintiff at Plaintiff's counsel's office number to discuss the motion and Plaintiff's position thereto. The call went straight to voicemail. The undersigned left a detailed message on the voicemail providing the undersigned's office and cell phone numbers. The undersigned then

immediately sent Plaintiff's counsel an e-mail on [3:44 p.m. February 3, 2020] that asked whether Plaintiff would agree to the Motion To Set Aside Mediated Settlement Agreement. In that e-mail, the undersigned again provided the undersigned's office and cell numbers.

This morning [8:21 a.m. February 4, 2020] the undersigned sent a follow up e-mail to counsel for Plaintiff indicating continued availability to discuss the matter with Plaintiff's counsel and again provided the office and cell number of the undersigned. The e-mail to Plaintiff's counsel indicated that if we were unable to connect by noon, the undersigned would be filing the motion at noon today. In response, Plaintiff's counsel called the undersigned and the motion was discussed.

During February 4th and 5th Plaintiff's counsel and the undersigned communicated both by phone and e-mail. In summary, Plaintiff's counsel confronted his client with the assertions of fraud and forgery and his client at first denied and then eventually admitted to the fraud. Plaintiff's counsel sought permission from his client to dismiss the claims and his client eventually refused. Thereafter, Plaintiff's counsel, on February 6, 2020 filed his Motion to Withdraw [DE 36].

The foregoing are all additional good faith efforts over and above those set forth in the original Motion To Set Aside Mediated Settlement Agreement [DE 31].

WHEREFORE it is prayed that this Court conduct an evidentiary hearing to determine if there has been a fraud on the court that would justify setting aside the January 31, 2020 Mediated Settlement Agreement or if there was fraudulent inducement by Plaintiff that would justify setting aside the January 31, 2020 Mediated Settlement Agreement. If the Court finds fraud, the undersigned asks that the Court set aside the Mediated Settlement Agreement of January 31 2020 and grant such other relief as warranted by Plaintiff's conduct including but not limited to

dismissing Plaintiff's claims with prejudice, assessing monetary sanctions against Plaintiff and referring Plaintiff to the State Attorney's office for consideration of criminal prosecution for fraud, perjury and/or forgery.

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that this 7th day of February, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system and we also certify that the foregoing document is being served this day either via transmission of Notice of Electronic Filing generated by CD/ECF or in some other authorized manner to: **Zandro E. Palma, Esq**., Zandro E. Palma, P.A., 9100 South Dadeland Boulevard, Suite 1500, Miami, FL 33156, Pone 305−446−1500, Fax: 305−446−1502, E-service: zep@thepalmalawgroup.com.

WEINSTEIN & COHEN, P.A.
Counsel for Defendant GLOBAL RESORTS GROUP, CORP.
Oaks Plaza - Suite 400
14125 NW 80th Avenue
Miami Lakes, Florida 33016
Miami           (305) 374-1011
Miami Fax       (305) 373-8127
E-Service:      eservice@weinsteincohen.com

By           /s/ Judson Cohen
        JUDSON L. COHEN
        Fla. Bar No.: 0948748

# Exhibit A

# TD Bank
America's Most Convenient Bank®

STATEMENT OF ACCOUNT

NANCY ANDREUS

Page: 3 of 4
Statement Period: Apr 21 2018-May 20 2018
Cust Ref #: 4346607538-650-T-###
Primary Account #: 7538

## DAILY ACCOUNT ACTIVITY

TD Convenience Checking
NANCY ANDREUS

Account # 7538

### ACCOUNT SUMMARY

| | |
|---|---|
| Beginning Balance | 207.45 |
| Electronic Deposits | 3,129.89 |
| Checks Paid | 780.00 |
| Electronic Payments | 2,220.09 |
| Other Withdrawals | 315.00 |
| Service Charges | 15.00 |
| Ending Balance | 7.25 |

| | |
|---|---|
| Average Collected Balance | -60.36 |
| Interest Earned This Period | 0.00 |
| Interest Paid Year-to-Date | 0.00 |
| Annual Percentage Yield Earned | 0.00% |
| Days in Period | 30 |

| | Total for this Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $315.00 | $315.00 |
| Total Returned Item Fees (NSF) | $0.00 | $0.00 |

## DAILY ACCOUNT ACTIVITY

### Electronic Deposits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/22 | ATM CASH DEPOSIT, *****30029660453 AUT 042119 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 160.00 |
| 04/22 | ATM CASH DEPOSIT, *****30029660453 AUT 042119 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 5.00 |
| 04/25 | VISA TRANSFER, *****30029660453, AUT 042519 VISA TRANSFER SQC NANCY ANDREUS VISA DIRECT * CA | 70.92 |
| 04/29 | ATM CASH DEPOSIT, *****30029660453 AUT 042819 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 32.00 |
| 05/03 | ACH DEPOSIT, EL PARAISO MOTEL DIRECT DEP ****505308797KT | 578.21 |
| 05/06 | ATM CASH DEPOSIT, *****30029660453 AUT 050419 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 500.00 |
| 05/13 | ATM CASH DEPOSIT, *****30029660453 AUT 051319 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 100.00 |
| 05/13 | ATM CASH DEPOSIT, *****30029660453 AUT 051319 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 80.00 |
| 05/13 | ATM CASH DEPOSIT, *****30029660453 AUT 051319 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 120.00 |

# TD Bank
America's Most Convenient Bank®

STATEMENT OF ACCOUNT

NANCY ANDREUS
221 NW 7TH AVE APT 5
MIAMI FL 33128

Page: 1 of 5
Statement Period: Jun 21 2018-Jul 20 2018
Cust Ref #: 4346607538-650-7-###
Primary Account #: 7538

TD Convenience Checking
NANCY ANDREUS                                             Account #  7538

## DAILY ACCOUNT ACTIVITY

**Electronic Deposits (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | DEBIT CARD CREDIT, *****30029660453, AUT 070119 VISA DDA REF THE HOME DEPOT 0277 MIAMI *FL | 6.06 |
| 07/03 | ATM CASH DEPOSIT, *****30029660453 AUT 070319 ATM CASH DEPOSIT 6601 S DIXIE HIGHWAY MIAMI *NY | 1,400.00 |
| 07/05 | DEBIT CARD CREDIT, *****30029660453, AUT 070419 VISA DDA REF APL ITUNES COM BILL 866 712 7753 *CA | 9.99 |
| 07/05 | ATM CASH DEPOSIT, *****30029660453 AUT 070419 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI *PA | 100.00 |
| 07/12 | ACH DEPOSIT, EL PARAISO MOTEL DIRECT DEP ****486333147KT | 603.52 |
| 07/15 | ATM CASH DEPOSIT, *****30029660453 AUT 071419 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI *PA | 400.00 |
| 07/16 | DEBIT CARD CREDIT, *****30029660453, AUT 071619 VISA DDA REF THE HOME DEPOT 0277 MIAMI *FL | 68.26 |
| 07/17 | ATM CASH DEPOSIT, *****30029660453 AUT 071719 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI *PA | 360.00 |
| 07/18 | ATM CASH DEPOSIT, *****30029660453 AUT 071819 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI *PA | 100.00 |
|  | Subtotal: | 4,751.47 |

**Electronic Payments**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/21 | DEBIT CARD PURCHASE, *****30029660453, AUT 062019 VISA DDA PUR IDT BOSS INTL CALLING 800 6768312 *NJ | 10.00 |
| 06/24 | DEBIT POS, *****30029660453, AUT 062219 DDA PURCHASE WESTAR HIALEAH HIALEAH *FL | 10.00 |
| 06/26 | DEBIT CARD PAYMENT, *****30029660453, AUT 062519 VISA DDA PUR COMCAST CABLE COMM 800 COMCAST *FL | 33.90 |
| 06/26 | DEBIT CARD PURCHASE, *****30029660453, AUT 062519 VISA DDA PUR PRESIDENT SUPERMAR MIAMI *FL | 22.52 |
| 06/27 | DEBIT CARD PURCHASE, *****30029660453, AUT 062519 VISA DDA PUR MARATHON PETRO113340 MIAMI *FL | 16.00 |
| 07/01 | DEBIT CARD PAYMENT, *****30029660453, AUT 062819 VISA DDA PUR CRT CREDITREPAIR COM 800 2326499 *UT | 19.95 |
| 07/01 | DEBIT CARD PURCHASE, *****30029660453, AUT 062919 VISA DDA PUR THE HOME DEPOT 277 MIAMI *FL | 100.00 |
| 07/01 | DEBIT CARD PURCHASE, *****30029660453, AUT 062919 VISA DDA PUR IDT BOSS INTL CALLING 800 6768312 *NJ | 10.00 |
| 07/01 | DEBIT CARD PURCHASE, *****30029660453, AUT 062919 VISA DDA PUR EL REY DE LAS FRITAS MIAMI *FL | 16.80 |

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

**TD Bank**
America's Most Convenient Bank®

**STATEMENT OF ACCOUNT**

NANCY ANDREUS
221 NW 7TH AVE APT 5
MIAMI FL 33128

Page: 1 of 6
Statement Period: Jul 21 2018-Aug 20 2018
Cust Ref #: 4346607538-650-7-###
Primary Account #: 7538

## TD Convenience Checking
NANCY ANDREUS

Account # 7538

### ACCOUNT SUMMARY

**Electronic Deposits (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/30 | DEBIT CARD CREDIT, *****30029660453, AUT 073019 VISA DDA REF MIAMI TOOL RENTAL 1 MIAMI * FL | 100.00 |
| 08/07 | VISA TRANSFER, *****30029660453, AUT 080719 VISA TRANSFER P2P YANIELA CHARARAN VISA DIRECT * AZ | 50.00 |
| 08/09 | ACH DEPOSIT, EL PARAISO MOTEL DIRECT DEP ****106163747KT | 603.52 |
| 08/12 | DEBIT CARD CREDIT, *****30029660453, AUT 081019 VISA DDA REF APL ITUNES COM BILL 866 712 7753 * CA | 3.73 |
| 08/13 | ATM CASH DEPOSIT, *****30053325247 AUT 081319 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 40.00 |
| 08/14 | ATM CASH DEPOSIT, *****30053325247 AUT 081419 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 400.00 |
| 08/14 | ATM CASH DEPOSIT, *****30053325247 AUT 081419 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 100.00 |
| 08/15 | VISA TRANSFER, *****30053325247, AUT 081519 VISA TRANSFER P2P YANIELA CHARARAN VISA DIRECT * AZ | 250.00 |
| 08/20 | ATM CASH DEPOSIT, *****30053325247 AUT 081919 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 25.00 |
| 08/20 | ATM CASH DEPOSIT, *****30053325247 AUT 081919 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 20.00 |
| 08/20 | ATM CASH DEPOSIT, *****30053325247 AUT 082019 ATM CASH DEPOSIT 1208 SW 8TH STREET MIAMI * PA | 100.00 |

Subtotal: 4,270.45

**Checks Paid**   No. Checks: 2   *Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT |
|---|---|---|
| 07/31 | 147 | 800.00 |
| 08/09 | 149* | 3,200.00 |

Subtotal: 4,000.00

**Electronic Payments**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/22 | DEBIT CARD PURCHASE, *****30029660453, AUT 071919 VISA DDA PUR ZIBBY WIRELESS MIAMI 833 449 4229 * NY | 33.74 |
| 07/22 | DEBIT CARD PURCHASE, *****30029660453, AUT 071919 VISA DDA PUR IDT BOSS INTL CALLING 800 6768312 * NJ | 10.00 |
| 07/22 | DEBIT CARD PURCHASE, *****30029660453, AUT 072019 VISA DDA PUR UBER TRIP HELP UBER COM * CA | 10.40 |
| 07/22 | DEBIT CARD PURCHASE, *****30029660453, AUT 072019 VISA DDA PUR UBER TRIP HELP UBER COM * CA | 9.73 |

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank N.A. | Equal Housing Lender